**STATE of Missouri, Respondent,**

v.

**Paul Albert WOOD, Jr., Appellant.**

**No. 61048.**

Supreme Court of Missouri,
En Banc.

March 11, 1980.

As Modified On Court's Own Motion and for Rehearing Denied April 8, 1980.

Lester W. Duggan, Jr., St. Charles, for appellant.

John Ashcroft, Atty. Gen., Steven Steinhilber, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Paul Albert Wood, Jr., was convicted by a jury in 1975 of murder in the first degree, § 559.010, RSMo 1969, and sentenced to life imprisonment. The court of appeals reversed the conviction for error in admission of a confession, and remanded the cause for a new trial. *State v. Wood*, 559 S.W.2d 268 (Mo.App.1977). He was again convicted by a jury in 1978 of murder in the first degree and his punishment was fixed at life imprisonment. Judgment was entered accordingly. Upon direct appeal to this Court he advances arguments in five categories: (1) reversal based on an improperly admitted confession as a bar to retrial; (2) use of the original information for the second trial; (3) sufficiency of evidence to support conviction and venue; (4) admissibility of statements made by defendant to witnesses Marts and Becker after the first trial and while in jail, a note containing defendant's address and phone number, and photographs of the victim's body; and (5) State's argument regarding defendant's failure to produce certain witnesses. Affirmed.

Preliminary hearing on a charge of murder, first degree of Barbara Crabtree was accorded in the Magistrate Court of Warren County, October 4, 1974. Clifford Cope,

Deputy Sheriff of Warren County, testified that on or about August 2, 1974, he was directed to a wooded area in the southern part of Warren County where lay the body of Barbara Crabtree with a cord tied around its neck. Paul Albert Wood, Jr., was at the scene and told deputy Cope that he had discovered the body. Melvin Twiehaus, Sheriff of Warren County, described the procedures surrounding a waiver of rights and subsequent confession by Wood. His signed waiver forms and a transcript of his confession were introduced into evidence. The court found probable cause and held Wood to answer in the Circuit Court of Warren County.

The trial resulted in the 1975 conviction of murder in the first degree and sentence to life imprisonment. The court of appeals reversed the conviction and remanded the cause for new trial holding:

> Because defendant's statement or confession and related testimony were improperly admitted in evidence, the cause must be reversed. We are unable to conclude on the record before us that the state may not be able to adduce additional evidence at another trial and accordingly the cause is remanded for new trial.

*State v. Wood, supra*, 559 S.W.2d at 273.

The case was retried on the original information in 1978, and again resulted in a first degree murder conviction and a sentence to life imprisonment. This appeal followed.

## I. PROPRIETY OF RETRIAL

Appellant contends that the reversal of the 1975 conviction for improper admission of defendant's confession barred reprosecution for the same offense under his right not to be placed in double jeopardy. He argues that the court of appeals found that the evidence was insufficient to sustain a conviction when it stated, "We are unable to conclude on the record before us that the State may not be able to adduce additional evidence at another trial and accordingly the cause is remanded for new trial." He also argues that the crux of the State's case in the first trial was the confession, and

absent it and its fruits, the evidence was insufficient to sustain the guilty verdict.

Appellant would support his position by *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Defendant Burks was tried in federal court for bank robbery. Convicted by a jury, he appealed alleging insufficiency of the Government's case. The court of appeals agreed that the Government had not made a sufficient case to support the verdict, reversed the conviction, and remanded the case to the district court for a new trial. The Supreme Court on further appeal held:

> the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient
>
> . . .

437 U.S. at 18, 98 S.Ct. at 2150.

The Supreme Court reasoned that for purposes of determining whether the Double Jeopardy Clause precludes a second trial after reversal of a conviction, a reversal based on insufficiency of evidence is to be distinguished from a reversal for trial error. Where the holding of the appellate court is that the Government has failed to establish criminal culpability, it says that a judgment of acquittal should have been entered after which, of course, defendant could not be retried for the same offense.

> The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.

437 U.S. at 11, 98 S.Ct. at 2147.

*State v. Basham*, 568 S.W.2d 518, 521 (Mo. banc 1978), determined:

> The court in *Burks* held that double jeopardy provisions of the U.S. Constitution, Fifth Amendment, preclude the retrial of a defendant where the initial conviction is reversed solely for lack of sufficient evidence to sustain the jury's verdict.

Neither the pronouncements in *Burks v. United States, supra,* nor this Court's interpretation of them in *State v. Basham, supra,* requires a finding that defendant's right against double jeopardy has been vio-

lated in this case. A second trial is precluded "once the reviewing court has found the evidence legally insufficient." There was no such finding by the court of appeals; and as stated in *State v. Basham, supra,* the bar to retrial is erected only when the conviction is reversed "solely for lack of sufficient evidence."

A conviction reversed for trial error in the admission of evidence is not one reversed for the purpose of giving the prosecution a second opportunity to present evidence as proscribed in *Burks v. United States, supra.* Such may be an incidental effect, but the true purpose is to protect defendant's right to a trial as free from error as practicable:

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e. g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

437 U.S. at 15, 98 S.Ct. at 2149.

Appellant insists that this Court must review the record of the first trial exclusive of the confession and its fruits. He argues that considering only the competent evidence on that record, this Court should find insufficient evidence as a matter of law; and under *Burks v. United States, supra,* reversal on that ground would bar retrial.

A reexamination of the record of the first trial is unnecessary. The issue in *Burks v. United States* was "whether a defendant may be tried a second time when a reviewing court has determined that in a prior trial the evidence was insufficient to sustain the verdict of the jury." The Court held that a retrial under such circumstances would violate the double jeopardy clause,

and that this result did not depend in any way on whether the defendant had asked for a new trial as part of his claim for relief. The Court also held that the decision in no way questioned prior holdings which allow a retrial when a conviction is reversed due to trial error.

■ Thus, under *Burks v. United States, supra,* two propositions are clear: (1) if a conviction is reversed solely due to evidentiary insufficiency the double jeopardy clause requires judgment of acquittal; and (2) if a conviction is reversed solely due to trial error, then retrial is constitutionally permissible. The question remaining is whether a new trial may be ordered when questions going to trial error as well as evidentiary insufficiency have been raised on appeal.

*Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), decided concurrently with *Burks v. United States, supra,* expressly left the question open. Defendant Greene's conviction was reversed by the Florida Supreme Court and the cause was remanded for a new trial, but it was not clear whether the majority of that court had based its decision on trial error or evidentiary insufficiency. The United States Supreme Court remanded the case for a determination of which alternative reading was correct and expressly reserved the question of double jeopardy consequences if the reversal was because the legally competent evidence was insufficient to prove guilt. 437 U.S. at 26, n. 9, 98 S.Ct. at 2155, n. 9. Appellant's assertion, therefore, that *Burks v. United States* constitutionally requires judgment of acquittal in such a case is refuted by the express avoidance of that issue in *Greene v. Massey, supra.*

■ When the trial court erroneously admits evidence resulting in reversal, as in the instant case, the State should not be precluded from retrial even though when such evidence is discounted there may be evidentiary insufficiency. The prosecution in proving its case is entitled to rely upon the rulings of the court and proceed accordingly. If the evidence offered by the State is received after challenge and is legally sufficient to establish the guilt of the accused,

the State is not obligated to go further and adduce additional evidence that would be, for example, cumulative. Were it otherwise, the State, to be secure, would have to assume every ruling by the trial court on the evidence to be erroneous and marshall and offer every bit of relevant and competent evidence. The practical consequences of this would adversely affect the administration of justice, if for no other reason, by the time which would be required for preparation and trial of every case. This is consistent with *Burks v. United States, supra,* which lists among examples of trial error which do not invoke the Double Jeopardy Clause with regard to retrial, the "incorrect receipt or rejection of evidence."

*United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) held that the double jeopardy clause of the Fifth Amendment did not preclude the retrial of one whose conviction is set aside because of an error in the proceedings leading to conviction, stating:

> From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

*Id.* at 466, 84 S.Ct. at 1589. To hold in this case that following any finding of error, the appellate court must then pause to reexamine sufficiency of the evidence could affect an appellate court's function of reviewing for error as dispassionately and disinterestedly as practicable.

In short, neither *Burks v. United States, supra,* nor *Greene v. Massey, supra,* proscribes retrial of an accused following reversal of prior conviction predicated upon an incorrect ruling by the trial court as to the admission of evidence even where the discounting of the improperly received evidence resulted in evidentiary insufficiency. *In accord, United States v. Mandel,* 591 F.2d 1347 (4th Cir. 1979); *United States v.*

*Block,* 590 F.2d 535 (4th Cir. 1978); *Morton v. State,* 284 Md. 526, 397 A.2d 1385 (1979); *State v. Boone,* 284 Md. 1, 393 A.2d 1361 (1978); *State v. Frazier,* 252 S.E.2d 39 (W.Va.1979); *contra, Commonwealth v. Funches,* 397 N.E.2d 1097 (Mass.1979); *State v. Abel,* 600 P.2d 994 (Utah 1979).

■ Appellant also argues that retrial was improper because in the first trial the State relied for conviction on defendant's confession and was therefore estopped from relying on different evidence for conviction in the second. He argues that the State should be prohibited from "proceeding on a different theory in a second proceeding after having taken a contradictory position in the first proceeding," citing *State v. Baird,* 288 Mo. 62, 231 S.W. 625 (1921). That case, inapposite here, held that in a trial where the State had offered evidence on defendant's character, the court would err if it failed to submit the issue to the jury. Such a holding, unquestioned here, does not point to error in retrying this appellant based on new or additional evidence following a reversal for an improperly admitted confession. The propriety of adducing new evidence at retrial is dealt with below.

## II. THE INFORMATION

Appellant claims he was not charged on a proper information as required by Mo. Const. Art. I § 19 which reads in part:

. . . and if judgment be arrested after a verdict of guilty on a defective indictment or information, or if judgment on a verdict of guilty be reversed for error in law, the prisoner may be tried anew on a proper indictment or information, or according to the law.

Section 544.250, RSMo requires a preliminary examination before a magistrate as a prerequisite to the filing of an information charging a felony. The essence of defendant's preliminary hearing was his confession without which the magistrate could not have made the finding of probable cause required before a valid information could issue. When the court of appeals reversed the first conviction it held inadmissible that confession. As the original preliminary hearing was based almost exclusively on the

confession, without it that hearing no longer adequately supported the finding of probable cause and the information was no longer a "proper" one as required by Art. I, § 19. Lacking a proper information, appellant contends, the circuit court had no jurisdiction to try defendant.

Appellant's argument is not directed to the sufficiency of the information itself; and it is sufficient in all formal respects. He also does not claim that he was not given a preliminary hearing at all; and the record shows he was given a hearing, that the magistrate found that a felony had been committed, and that there was probable cause to believe the accused guilty of the crime.

■ Appellant's claim, raised for the first time on this appeal, is that he was not accorded the preliminary examination contemplated by the statutes and the rules of this Court. He did not complain of a lack or an insufficiency of his preliminary hearing at any time prior to trial, and did not mention it in his motion to quash the information. Where an accused proceeds to trial upon a plea of not guilty without an objection that he has had no preliminary hearing or a defective one, he waives his right to object. *State v. Ashe,* 403 S.W.2d 589 (Mo. 1966).

Appellant urges this point as a matter of plain error under Rule 27.20(c). To succeed he must show that failure to grant relief on this argument would result in a miscarriage of justice.

■ Where appellant received a preliminary hearing, was charged by a proper information, was tried, convicted, and sentenced, then following reversal which gave him the retrial requested, was retried on the same valid information for the same charge and once again convicted, it may not be said that a miscarriage of justice has resulted for an alleged insufficiency in the preliminary hearing.

### III. SUFFICIENCY OF THE EVIDENCE

Appellant attacks the sufficiency of the evidence to support the conviction of first degree murder, particularly the required elements of premeditation and deliberation.

■ Appellant was convicted under § 559.010, RSMo 1969, now repealed, which required for conviction a finding that a killing was done with deliberation and premeditation. For an act to be done with deliberation it must be performed in a cool and deliberate state of mind. A finding of this element does not depend upon the time involved as much as it does upon an inference reasonably drawn from the evidence and circumstances surrounding the act. *State v. Nelson,* 514 S.W.2d 581 (Mo.1974). Premeditation is thought beforehand of any length of time, however short. *State v. Smart,* 485 S.W.2d 90 (Mo.1972). On review, evidence is viewed in the light most favorable to the verdict ignoring defendant's evidence except where favorable to the State. *State v. Nichelson,* 546 S.W.2d 539 (Mo.App.1977). The court is to determine only whether the evidence is sufficient to make a submissible case, from which reasonable jurors could have found the defendant guilty as charged. *State v. Longmeyer,* 566 S.W.2d 496 (Mo.App.1978).

Evidence at trial showed that:

On July 30, 1974, Mrs. Barbara Crabtree reported to work by 9:00 a. m. at the J. C. Penney store in Washington, Missouri. She went to her station on the balcony, an area where no other clerks were assigned. Shortly before noon, defendant was observed on the balcony talking with her. She left for her lunch break which lasted from noon until one. She had always been a punctual employee who never returned late from lunch. When she did not return, her employer reported her absence to the Washington Police Department. Her employer also discovered a note pinned to her locker key in her locker which had written on it defendant's phone number and address. On August 1, 1974, the Warren County Deputy Sheriff received a call in the late afternoon to proceed to a southern location in that county. Upon arrival he was greeted by defendant and another man and followed them to a wooded area where

he saw the body of the victim. There was a cord wrapped around the victim's neck and it was later determined she had died of strangulation. Sometime during February or March of 1975 following the first jury verdict and prior to proceedings on the first motion for new trial, defendant had several conversations with Edgar Becker, a fellow prisoner in the Franklin County Jail. Becker testified at the second trial that defendant told him that he had killed a woman near the Washington Airport in Warren County and that he had dumped her nearby. Defendant also told him that he had choked the woman to death and would do it again if he had the chance. Franklin County Deputy Sheriff Bill Marts also testified at the retrial. During February and March of 1975, Marts was the chief jailer of the Franklin County Sheriff's Department. He testified that defendant told him that he had killed the "snitching bitch" and that he would do it again if he had the chance. Defendant also told Marts that he had strangled the woman because she had snitched on him and she deserved it. Defendant identified the woman he killed as being named Crabtree.

■ That defendant told others that he had strangled Mrs. Crabtree for a specific reason and that he would do it again if given the chance is sufficient evidence from which a reasonable juror could infer that defendant acted in a cool and deliberate state of mind with thought beforehand and thereby find deliberation and premeditation.

■ Appellant also claims there was insufficient evidence to establish that the crime took place in Warren County and that venue was thereby improper in violation of Mo.Const. Art. I, § 18(a). Having proceeded to trial without objection, appellant waived the issue. *State v. Speedy,* 543 S.W.2d 251 (Mo.App.1976). In any event, the testimony of witness Becker places the criminal act in Warren County.

## IV. TESTIMONY OF MARTS AND BECKER; THE NOTE; THE PHOTOGRAPHS

■ Appellant makes five attacks on the admission of testimony of Marts and Becker regarding the inculpatory statements defendant made while in the Franklin County jail. First he claims, without citing authority, that upon remand the State should not be allowed to introduce new evidence not used in the first trial.

■ Upon reversal of a conviction, the prosecution is not limited at the new trial to the evidence from the first trial but is free to strengthen its case with new evidence. *United States v. Shotwell Mfg. Co.,* 355 U.S. 233, 243, 78 S.Ct. 245, 251, 2 L.Ed.2d 234 (1957); *State v. Newkirk,* 49 Mo. 472 (1872).

Appellant charges there is a question whether the testimony of Becker pertains to the crime in question. Lacking such a connection, the testimony is proof of another crime, inadmissible unless such proof has some legitimate tendency to establish defendant's guilt of the charge for which he is on trial.

Evidence of separate crimes is generally inadmissible but such rule is inapplicable unless the testimony of Becker refers to a different crime than the August 1974 strangulation of Barbara Crabtree. The record establishes otherwise. Becker testified that while in the Franklin County jail in early 1975, defendant told him that he had strangled a woman and had dumped the body near the Washington Airport. Other evidence at trial had already established that the victim had been strangled and the body left near the Washington Airport in August of 1974. The trial court correctly ruled that Becker's testimony referred to the crime on trial. His testimony was therefore not evidence of a separate crime and was properly admitted.

■ Appellant argues that the inculpatory statements made while in jail are not admissible because the State did not first prove the corpus delicti by evidence other than the statements. Corpus delicti cannot be presumed but must be proved by legal evidence sufficient to show that the specific crime charged has actually been committed

by someone. *State v. Summers,* 362 S.W.2d 537 (Mo.1962).

Evidence that a young woman who had been strangled and her body found abandoned in the woods was sufficient proof that an injury had been inflicted by criminal agency. Appellant's argument that aside from the statements of Marts and Becker there was no evidence to connect him with the crime is to no avail. Proof of the corpus delicti does not include proof of defendant's connection with the crime charged. *State v. Murphy,* 415 S.W.2d 758 (Mo.1967).

Appellant contends that he was in custody as a direct result of his conviction in 1975 which was a direct result of his confession and the fruits thereof, which were held inadmissible when the conviction was reversed by the court of appeals. Consequently the statements made to Marts and Becker are fruits of the unlawfully obtained confession and therefore inadmissible. Although he cites no authority for his argument, appellant apparently relies on *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962). The United States Supreme Court, however, makes its proscription inapplicable to this case:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Id.* at 488, 83 S.Ct. at 417.

Defendant's statements were made at a time when he was being held lawfully and made without the questioning by any state official. He volunteered the information. The State did not obtain this evidence through the exploitation of its primary illegality two years earlier but by defendant's spontaneous offer. *See State v. Olds,* 569 S.W.2d 745 (Mo. banc 1978).

The last of appellant's attacks on the admissibility of the testimony of Marts and Becker is that by failing to call as witnesses others who may have overheard appellant's inculpatory statements, the State has failed its burden of proving the voluntariness of the statements.

The State has the burden of showing by a preponderance of the evidence that a defendant's statements made while in custody were voluntarily given. *State v. Olds,* 569 S.W.2d 745 (Mo. banc 1978). Absent a showing of special circumstances, the State need only make a prima facie showing of voluntariness. *State v. Nolan,* 423 S.W.2d 815 (Mo.1968). It was established both at the suppression hearing and at trial that the statements by defendant while in custody at the Franklin County jail were not made in response to any questioning. The record shows that defendant's statements, far from being solicited by anyone, were volunteered without prompting. The State made its required prima facie showing of voluntariness and the statements were properly admitted.

Appellant charges the note found in the victim's locker at Penneys was not material or relevant to any issue in the case.

Evidence is relevant if it logically tends to prove or disprove a fact in issue or to corroborate evidence which itself is relevant and bears on the principal issue. In a criminal proceeding, questions of relevancy are left to the discretion of the trial court and its ruling will be disturbed only if an abuse of discretion is shown. *State v. Proctor,* 546 S.W.2d 544 (Mo.App.1977).

The note was relevant in that it tended to show a connection between the victim and defendant and was corroborative of other evidence establishing that link. The last place the victim was seen alive was at work; there the note was found. Defendant was the last person with whom the victim was seen; the note contained his address and phone number. Admission of the note does not manifest an abuse of discretion.

 Appellant charges the court erred in admission of two photographs which depicted the victim's partially clothed body in a state of partial decomposition because "their probative value, if any, was heavily outweighed by their prejudicial value." It is within the discretion of the trial court to determine whether potentially prejudicial or inflammatory evidence should be admitted, and relevancy is the principal criterion. *State v. Johnson,* 539 S.W.2d 493 (Mo.App.1976), *cert. denied,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779. Relevant evidence is not inadmissible because it is prejudicial. Nor is it a valid objection that a witness had described matters depicted in the photographs if it is otherwise relevant. *State v. Jackson,* 499 S.W.2d 467 (Mo.1973). Such photographs should not be admitted where their sole purpose is to arouse the emotions of the jury and to prejudice the defendant. *State v. Floyd,* 360 S.W.2d 630 (Mo.1962).

Under these principles, the photographs in this case were not improperly admitted because they were relevant to identify the victim, to show the nature and location of the injury, to illustrate the character of the weapon, to show the degree of the crime, to show the cause of death, and to show the surroundings in which the body was found.

### V. CLOSING ARGUMENT

Finally, appellant charges error to the State's closing argument. Defense counsel argued in closing that the State's case relied heavily on statements that defendant allegedly made while in jail. He then suggested that if defendant really had made those statements, others besides Becker and Marts would have heard them but that the State had produced no others. To this the State responded:

> Mr. Duggan made some reference to others who were in or had access to the jail at the time that Mr. Becker and Mr. Wood were both incarcerated in the Franklin County Jail. He made reference to the fact that those people were not here to testify today. * * * Those

persons were just as available to the Defendant to subpoena to have them here today to testify as they were to the State.

Appellant argues this was an attempt to shift the burden of proof away from the State and was an improper comment on defendant's failure to testify.

The trial court is afforded wide discretion in determining the permissible scope of counsel's argument to the jury and unless an abuse of discretion is demonstrated, to the prejudice of the accused, the case will not be reversed on appeal. *State v. Conger,* 540 S.W.2d 169 (Mo.App.1976). In addition, it is proper for the prosecutor to retaliate to an issue raised by a defendant's argument even if the prosecutor's comment would otherwise be improper. *State v. Swenson,* 551 S.W.2d 917 (Mo.App.1977).

The argument in question explains to the jury that the power of subpoena is equally available to appellant and the State. If there were anything impermissible about such a comment, it was made in direct response to the argument of defense counsel that the State's failure to produce such witnesses implied defendant's innocence. The trial court did not abuse its discretion by allowing such retaliation.

Judgment affirmed.

All concur.