

# In the Missouri Court of Appeals
# Eastern District
## DIVISON FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101106 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | |
| MARKUS STEED, | ) | Honorable Joan L. Moriarty |
| | ) | |
| Appellant. | ) | Filed: February 24, 2015 |

### *Introduction*

Marcus Steed (Defendant) appeals the judgment of conviction entered after a jury found him guilty of unlawful possession of a firearm and unlawful use of a weapon. Defendant claims the trial court erred in denying: (1) his request for a mistrial when the trial court instructed the jury to continue deliberations; and (2) his motion for judgment of acquittal because the State produced insufficient evidence to support his conviction. We affirm.

### *Factual and Procedural Background*

Viewed in the light most favorable to the verdict, the evidence at trial revealed the following: On May 29, 2012, Defendant and another man were walking along a sidewalk, when Officer Barone, who was on patrol with Officers Jenkins and Henry, recognized Defendant from a previous arrest and asked to speak to him. While Officer Barone spoke to Defendant, Officer Henry conducted a computer inquiry and learned that Defendant had active warrants. Officer Barone handcuffed Defendant, informed him he was under arrest, and performed a pat-down

search incident to arrest. In his search, Officer Barone discovered a loaded, nine-millimeter semiautomatic pistol in Defendant's waistband beneath his untucked shirt.

The State charged Defendant with unlawful possession of a firearm and unlawful use of a weapon. The trial court held a jury trial in December 2013. At trial, the State called to testify Officer Katherine Castillo, a firearms examiner, and Officers Jenkins and Barone. Officer Jenkins stated that he observed Officer Barone remove from Defendant's waistband "a rusted, brown semiautomatic handgun." Officer Jenkins identified the gun in court ("State's Exhibit 1") and again described it as "rusty, brown." Officer Barone also identified the gun. On cross-examination, he affirmed that, in the police report, he wrote that the gun had a "nickel finish," but agreed with defense counsel that the gun, in fact, had a "blue finish." On redirect examination, Officer Barone described the gun as "rusty brown." Officer Castillo, the firearms examiner who examined the gun seized from Defendant, testified that the gun had a "blue-steel finish" and appeared "slightly" rusted.

The parties stipulated to Defendant's prior felony convictions,[1] and Defendant rested at the close of the State's case without presenting evidence. Defense counsel moved for a judgment of acquittal at the close of the State's evidence and at the close of all evidence, and the trial court denied the motions.

The jury retired to begin deliberations at 4:40 p.m. At 5:50 p.m., the jury sent the trial court the following inquiry: "We cannot come up with a decision today. Is it possible to come back tomorrow to deliberate tomorrow?" After consulting the parties, the trial court released the jury for the evening.

---

[1] After the jury left the courtroom, the State presented evidence of Defendant's prior convictions and the trial court found that Defendant was a prior offender under Section 558.016.

The following day, the jury resumed deliberations at 9:13 a.m. At 10:19 a.m., the jury sent the trial court the following question: "What do we do when we can not [sic] come to a unanimous decision[?]" The prosecutor requested that the trial court urge the jury to "continue deliberating" as they had "only deliberated for a total of around two hours." She explained, "I think given more time, there's a possibility they could reach a unanimous verdict." Defense counsel disagreed and moved for a mistrial, arguing that the jury had already deliberated over two hours and "their question to the [c]ourt indicated absolutely no possibility of coming to an unanimous decision whatsoever, making further deliberation a pointless exercise."

After hearing arguments, the trial court sent the jury the following response: "The court advises that the jury is to continue deliberations." At 12:00 p.m., the jury returned its verdict finding Defendant guilty of both counts. The trial court sentenced Defendant as a prior offender to concurrent terms of seven years' imprisonment for unlawful possession of a firearm and two years' imprisonment for unlawful use of a weapon. Defendant appeals.

### Standard of Review

Appellate courts review the denial of a request for a mistrial only for abuse of discretion. State v. Salazar, 414 S.W.3d 606, 620 (Mo.App.S.D. 2013). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the existing circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Bracken, 333 S.W.3d 48, 55 (Mo.App.E.D. 2010) (internal quotation omitted).

Our review of a challenge to the sufficiency of the evidence supporting a criminal conviction is limited to a determination of whether the trier of fact reasonably could have found the defendant guilty. State v. Blankenship, 415 S.W.3d 116, 121 (Mo. banc 2013). "Appellate

3

courts do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." Id. (quotation omitted).

*Discussion*

In his first point, Defendant claims the trial court erred in denying his request for a mistrial after it "twice advised the court that it could not arrive at a decision . . . ." Defendant further contends that the trial court's action was coercive and prejudicial because "it compelled the jury to return guilty verdicts against [Defendant]." The State counters that the court's instruction to the jury to continue deliberations was not coercive.

"Coercion of a guilty verdict constitutes error." State v. Manley, 414 S.W.3d 561, 570 (Mo.App.E.D. 2013). "A verdict is considered coerced when it appears, under all the circumstances, that the trial court was virtually directing that a verdict be reached and implying that it would hold the jury until that happened." State v. Griffith, 312 S.W.3d 413, 421 (Mo.App.S.D. 2010). "Urging the jury to reach a verdict by a certain time or telling the jury that it is required to reach a verdict is also deemed coercive." Manley, 414 S.W.3d at 570. "A reversal is required if it is conceivable that a challenged instruction coerced the jury into returning a verdict, and nothing in the record is available to find otherwise." Id. (quoting State v. Greenlee, 327 S.W.3d 602, 616 (Mo.App.E.D. 2010)).

As an initial matter, we address Defendant's claim that the jury "*twice* advised the court that it could not arrive at a decision." (emphasis added). The jury submitted two questions to the trial court, the first of which asked: "We cannot come up with a decision today. Is it possible to come back tomorrow to deliberate tomorrow?" Nothing in this question suggests that the jury

4

deemed itself unable to reach a verdict. The question simply reveals that that, at 5:50 p.m., the jury concluded that it could not reach a decision that day.

Nor does the jury's second question –"What do we do when we can not [sic] come to a unanimous decision[?]" – communicate an inability to reach a unanimous decision. The question, asked in the future tense, presents a hypothetical question. The jury was contemplating the possibility of a hung jury, but it was not declaring deadlock.

Assuming *arguendo* that the jury was hung when the trial court instructed it to continue deliberations, Defendant has not alleged, much less demonstrated, that the trial court "stated or implied that the jury would not be released until it returned a verdict, that it must reach a verdict by a certain time, or that it was required to reach a verdict . . . ." Manley, 414 S.W.3d at 570 (quoting Greenlee, 327 S.W.3d at 617). Indeed, Defendant acknowledges in his brief: "[Defendant] does not allege that the trial court 'positively misdirected' the jury by telling it that it must continue to deliberate." The trial court's instruction did not require the jury to reach a verdict, but merely to continue deliberations. See id.

Furthermore, the circumstances surrounding the jury's deliberations and verdict do not suggest that the verdict was coerced. The jury deliberated over two hours before it asked the trial court, "What do we do when we can not [sic] come to a unanimous decision[?]," and it deliberated another one and one half hours after the trial court advised the jury to continue deliberating. "Missouri courts have found that a time period as short as approximately one-half hour was not a sign that the verdict was coerced." Manley, 414 S.W.3d at 571. Additionally, Defendant does not allege, and the record does not suggest, that the trial court knew the jury's numerical split or the majority's position, a factor which may, in certain circumstances, evidence coercion. See State v. Saunders, 318 S.W.3d 745, 749 (Mo.App.W.D. 2010). Because

5

Defendant fails to identify any evidence that the trial court's instruction to the jury to continue deliberations coerced a guilty verdict, we conclude that the trial court did not abuse its discretion when it denied Defendant's request for a mistrial. Point denied.

In his second point, Defendant claims the trial court erred in denying his request for judgment of acquittal because the State presented insufficient evidence to prove he committed the crimes of unlawful possession of a firearm and unlawful use of a weapon. Specifically, Defendant contends that the State "failed to prove every element of each offense beyond a reasonable doubt in that the contradictory descriptions of the gun given by Officers Jenkins, Castillo, and Barone cast doubt on whether the gun which was admitted as State's Exhibit 1 was in fact the gun allegedly seized from [Defendant]." In response, the State asserts that it presented sufficient evidence at trial "from which a reasonable juror might have found [Defendant] guilty of all the essential elements of the crime."

"To convict a defendant of a criminal offense, the State is required, as a matter of due process, to prove beyond a reasonable doubt each and every element of the offense charged." State v. Slocum, 420 S.W.3d 685, 687 (Mo.App.E.D. 2014). As charged here, a person commits the crime of unlawful possession of a firearm "if such person knowingly has any firearm in his or her possession and . . . [s]uch person has been convicted of a felony under the laws of this state . . . ." Mo. Rev. Stat. § 571.070.1(1).[2] A person commits the crime of unlawful use of a weapon when he or she knowingly "[c]arries concealed upon or about his or her person . . . a firearm . . . ." Mo. Rev. Stat. § 571.030.1(1). To prove Defendant guilty of both offenses, the State was required to prove that Defendant knowingly possessed a firearm.

---

[2] All statutory references are to RSMo 2000 as supplemented unless otherwise indicated

6

Here, the State presented two police officers who testified that, at the time of his arrest, Defendant carried a nine-millimeter semiautomatic handgun in his waistband under his shirt. This evidence was sufficient to support the jury's finding that on May 29, 2012, Defendant was carrying a gun. Discrepancies in the witnesses' descriptions of the gun relate to matters of witness credibility, which are beyond our scope of review. See State v. Dvorak, 295 S.W.3d 493, 504 (Mo.App.E.D. 2009). "[T]he credibility and the effects of conflicts or inconsistencies in testimony are questions for the jury." Id. (quotation omitted). Based on our review of the record, we hold that the State adduced sufficient evidence to prove the element of each crime beyond a reasonable doubt. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

_____

Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.

7